UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALI MUSAID MUTHANA, | Case No. 2:23-cv-11665 |
| *Plaintiff,* | Mark A. Goldsmith<br>United States District Judge |
| v. | |
| PENINAH ONYANGO and<br>RICHARD HARBAUGH, | Patricia T. Morris<br>United States Magistrate Judge |
| *Defendants.* | |
| _____/ | |

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 49, 54)
AND TO DENY AS MOOT DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT (ECF Nos. 44, 54)**

I. **RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED** that Defendant Peninah Onyango's and Defendant Richard Harbaugh's motions to dismiss (ECF Nos. 49, 54) as a sanction for failure to comply with a Court order be **GRANTED**. If adopted, Onyango's and Harbaugh's motions for summary judgment (ECF Nos. 44, 54) should be **DENIED AS MOOT**.

II. **REPORT**

A. **Factual Background**

This is a prisoner civil rights action under 42 U.S.C. § 1983. Plaintiff Ali

1

Musaid Muthana is a prisoner in the custody of the Michigan Department of Corrections and is incarcerated at the Woodland Correctional Facility. (ECF No. 1, PageID.1). At all relevant times, Onyango was a nurse practitioner at the facility while Harbaugh was the health unit manager. (*Id.*). Muthana alleges violations of his Eighth Amendment right to be free of cruel and unusual punishment. (*Id.*).

Muthana alleges that Defendants failed to treat his coronary artery disease for which he needed a surgery approximately eighteen years prior to place a stent. (*Id.* at PageID.4–5). Muthana began sending health care requests in April 2022, "complaining of chest pain extending to his jaw, neck, and arm with shortness of breath." (*Id.* at PageID.4). In these requests, Muthana emphasized that he was "experiencing pain." (*Id.* at PageID.4–5). For the eight-month period between April and November 2022, "Defendants denied [Muthana] diagnosis and treatment and refused to send him to the hospital." (*Id.* at PageID.5).

In November 2022, Onyango ordered a stress test for Muthana at a hospital. (*Id.*). Muthana told Onyango that he could not undergo a routine stress test because he was allergic to the injection administered during the test. (*Id.*). Even after learning about Muthana's allergy, Onyango did not change the ordered testing. (*Id.* at PageID.5–6).

When Muthana arrived at the hospital, he informed staff of his allergy. (*Id.* at PageID.6). Given his allergy, staff was unable to perform the ordered stress test.

2

(*Id.*). Muthana was returned to prison without haven undergone any testing. (*Id.*).

About a month later, Onyango ordered another stress test, again failing to take into consideration Muthana's allergy. (*Id.*). This time, however, Muthana complained to hospital staff. (*Id.*). Hospital staff then performed a type of stress test that did not require the injection. (*Id.*). The results of the test were abnormal and following a chest ultrasound, Muthana immediately underwent a cardiac catheterization procedure. (*Id.*). During the procedure, at least four blockages were discovered, and "a stent [was] placed in his right coronary artery." (*Id.*).

After returning to prison, Muthana continued to experience and complain about chest pain. (*Id.*). Onyango ignored his complaints and refused to send Muthana back to the hospital. (*Id.*). Onyango told Muthana that she "did not want to put her job in jeopardy" by sending him to the hospital. (*Id.*). Eventually, a different provider sent Muthana to the hospital where he had a procedure to place two additional stents. (*Id.* at PageID.6–7). Following this procedure, Onyango prescribed Muthana two heart medications that caused him serious side effects and Muthana's heart doctor later informed him that these "were not good medications for his heart." (*Id.* at PageID.7).

### B. Procedural Background

On December 7, 2023, a scheduling order was entered setting a deadline of April 26, 2024, for all discovery and a deadline of May 30, 2024, for the filing of

3

dispositive motions. (ECF No. 24). In March 2024, Onyango filed a motion to compel, requesting that the Court order Muthana to sign an authorization for the release of his medical records (ECF No. 31), and a motion to extend the scheduling order deadlines (ECF No. 33). The motion to compel was granted and the motion to extend was granted in part. (ECF No. 35). The discovery deadline was extended to June 10, 2024, and the dispositive motion deadline to July 8, 2024. (*Id.*).

On June 10, 2024, Harbaugh filed a motion requesting in relevant part that the Court order Muthana to sit for a deposition via Zoom without the aid of an interpreter and also that the Court extend the deadlines for conducting Muthana's deposition and filing a dispositive motion. (ECF No. 40). Harbaugh explained that Muthana had mailed him a motion that had not yet been entered on the docket wherein Muthana stated that he would not be sitting for the noticed deposition. Muthana explained that he only wanted to sit for an in-person deposition with the aid of a translator because he believed that the transcript from his deposition in a prior case that had been taken via Zoom without the assistance of a translator was inaccurate. (*Id.* at PageID.224–25). Muthana's motion was later docketed with the Court. (ECF No. 41). Ultimately, the Court extended discovery to August 10, 2024, for the limited purpose of conducting Muthana's deposition, without requiring an interpreter, and instructed Harbaugh to serve a new notice of deposition on Muthana. (ECF No. 46).

The new notice informed Muthana that Harbaugh would be taking his deposition via Zoom on July 30, 2024, at 1 p.m. (ECF No. 49-1). Muthana appeared for his deposition; however, he refused to answer any questions. (ECF No. 49-2). This was because Muthana objected to the presence of counsel for Onyango, explaining that only Harbaugh noticed the deposition and that he was not ready to answer any questions about Onyango. (*Id.* at PageID.751–52). Counsel for Harbaugh explained that even if counsel for Onyango was not present that he would be asking questions about Onyango "because it's all part of the facts of [the] lawsuit." (*Id.* at PageID.752). Counsel for Onyango asked Muthana if he would be willing to continue with the deposition if he only observed and did not ask any of his own questions. (*Id.*). Muthana refused. (*Id.*). Both attorneys informed Muthana that they would be moving to dismiss the case if he refused to participate in the deposition. (*Id.* at PageID.752–53). True to their words, both Defendants have now filed motions to dismiss on those grounds. (ECF Nos. 49, 54).

C. **Legal Standard**

"Under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, "a district court may sanction parties who fail to comply with its orders in a variety of ways, including dismissal of the lawsuit.' " *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir. 1995)). Similarly, Rule 41(b) provides: "If the plaintiff fails to prosecute or to

comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The "authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the [d]istrict [c]ourts." *Id.* at 629-30. "[D]istrict courts possess broad discretion to sanction parties for failure to comply with procedural requirements." *Tetro v. Elliot Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 991 (6th Cir. 1999) (citing *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991)).

### D. Analysis

When considering a 41(b) or 37(b)(2)(A) motion, district courts in this Circuit must consider the following four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citing *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999)); *see also Universal Health Grp.*, 703 F.3d at 956. As will be explained below, on balance, these factors weigh in favor of dismissal.

6

To begin, the Undersigned will address Muthana's argument that counsel for Onyango was not allowed to participate in the deposition without serving a separate notice. As another district court has explained,

> [t]here is no formal requirement for a party seeking to cross-examine a deponent to serve a notice. *Spray Products, Inc. v. Strouse, Inc.*, 31 F.R.D. 211, 212 (E.D. Penn. 1962) (stating that another party may examine a deponent on issues not addressed in the direct examination without serving a prior notice of deposition). In a multi-party lawsuit, one party may notice the deposition and other parties may attend and cross-examine the deponent without also having to notice the deposition. *Smith v. Logansport Comm. School Corp.*, 139 F.R.D. 637, 642 (N.D. Ind. 1991) (similar to situation here, plaintiff's counsel and co-defendant's counsel could cross-examine the witness deposed by defendant).

*FCC. v. Mizuho Medy Co.*, 257 F.R.D. 679, 681–82 (S.D. Cal. 2009). And as another district court has noted, choosing to depose a witness jointly promotes judicial economy. *C.R. by & through Roe v. Elk Grove Unified Sch. Dist.*, No. 2:20-CV-02296 KJM AC, 2024 WL 3890080, at *2 (E.D. Cal. Aug. 21, 2024). Similarly, a district court in this Circuit has stated that under Federal Rule of Civil Procedure 30(c)(1), "counsel for both parties of a civil action are permitted to question witnesses during depositions, regardless of which party noticed the deposition." *Longino v. City of Cincinnati*, No. 1:12-CV-424, 2013 WL 831738, at *5 (S.D. Ohio Mar. 6, 2013).

Perhaps most on point, in a prisoner civil rights case like this one, a district court rejected the prisoner-plaintiff's argument that counsel for an individual

defendant should not have attended nor participated in his deposition because only the Department of Corrections defendants had noticed the deposition. *Smith v. Wilson*, No. CV1700119HDLCJTJ, 2019 WL 5685338, at *5 (D. Mont. Oct. 8, 2019), *report and recommendation adopted*, 2019 WL 5684866 (D. Mont. Nov. 1, 2019). The court explained that the "[d]efendants are correct that nothing in the Court's orders or Rule 30 supports the proposition that a plaintiff is entitled to separate notice from each defendant prior to the taking of his deposition." *Id.*

While Muthana is proceeding *pro se*, his "*pro se* status, in and of itself, does not entitle[] him to disregard the federal or local rules, or the orders of this court." *Sandweiss Law Ctr., P.C. v. Bunting*, No. 2:07-CV-10099, 2007 WL 1084565, at *1 (E.D. Mich. Apr. 11, 2007). The Court has already explained in a prior order that Muthana needed to sit for a deposition and that Harbaugh could move for sanctions if Muthana refused to do so. (*See* ECF No. 46). Despite this, Muthana still refused to answer any questions at his deposition.

Even if Muthana's confusion over whether counsel for Onyango was allowed to question him without serving a separate notice was justified, his objections to Harbaugh's attorney asking any questions either concerning Onyango or in the presence of her attorney was unreasonable. As can be gleaned from Muthana's allegations, Onyango's acts and omissions are the primary focus of this lawsuit. Harbaugh's counsel could not have learned any pertinent information without asking

8

about Onyango's role in Muthana's medical care.

Having found Muthana's position unpersuasive, the Undersigned must apply the facts of this case to the four factors listed above.

First, Muthana's refusal to participate in his deposition after the Court ordered him to do so was done willfully. Muthana is the sole party at fault for his behavior and his refusal to accept Onyango's counsel's offer to act as a silent observer constitutes bad faith.

Second, Muthana's behavior prejudiced both Defendants. Muthana is suing Defendants for violating his constitutional rights; they cannot adequately defend against his allegations without his testimony. Both Defendants have already had to move to compel Muthana's compliance with basic discovery obligations. Filing motions, hiring a court reporter to record a deposition, and preparing for a deposition are all activities that cost time and money.

Third, the Court listed the possible sanctions for failure to comply with discovery in its prior order (*see* ECF No. 46), and counsel for both Defendants warned Muthana that they would file motions to dismiss if he refused to answer questions at his deposition.

Fourth, the Court has already ordered Muthana to sit for a deposition and extended the discovery deadline twice following Muthana's refusals to comply with his discovery obligations. As such, it appears unlikely that any sanction less drastic

than dismissal would affect Muthana's behavior.

In sum, all four factors weigh in favor of granting the motions to dismiss. Thus, the Undersigned recommends that this case be dismissed without reaching the underlying merits by considering the pending motions for summary judgment.

### E. Conclusion

For these reasons, **IT IS RECOMMENDED** that Onyango's and Harbaugh's motions to dismiss (ECF Nos. 49, 54) as a sanction for failure to comply with a Court order be **GRANTED**. If adopted, Onyango's and Harbaugh's motions for summary judgment (ECF Nos. 44, 54) should be **DENIED AS MOOT**.

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v.*

4

*Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 9, 2024                    s/PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge